USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 3|9|17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MILLENNIUM HEALTH, LLC,                    16-cv-748 (JGK)

                        Plaintiff,         MEMORANDUM OPINION
                                           AND ORDER

        -against-

EMBLEMHEALTH, INC. AND HEALTH INSURANCE
PLAN OF GREATER NEW YORK D/B/A/
EMBLEM HEALTH,
                        Defendants.

JOHN G. KOELTL, District Judge:

    The plaintiff Millennium Health, LLC ("Millennium") claims

that the defendants EmblemHealth and Health Insurance Plan of

Greater New York ("Emblem"), who maintain health insurance

plans, improperly ignored and ultimately refused to pay for more

than 27,000 claims submitted by Millennium for clinical drug

testing. The plaintiff claims that Emblem violated the New York

"Prompt Pay" statute, N.Y. Ins. L. § 3224-a, and the New York

deceptive practices law, N.Y. Gen. Bus. L. § 349, and that it

breached an implied-in-fact contract with Millennium to pay for

services rendered by Millennium to patients covered by Emblem's

health plans. Millennium also seeks a declaratory judgment,

among other relief, directing that Emblem is required to pay for

all services Millennium rendered to patients enrolled in

Emblem's plans. The defendants now move to dismiss the complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil

1

Procedure for failure to state a claim or, in the alternative,
for a more definite statement pursuant to Rule 12(e) of the
Federal Rules of Civil Procedure. This Court has jurisdiction
under 28 U.S.C. § 1332(a). For the reasons explained below, the
motion is granted in part and denied in part.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985). The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009). While the Court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in

2

the complaint is inapplicable to legal conclusions." Id.; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107 (JGK), 2015 WL 9462083, at *1 (S.D.N.Y. Dec. 23, 2015).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V., 89 F. Supp. 3d 602, 607-08 (S.D.N.Y. 2015).

## II.

The following facts alleged in the complaint are accepted as true for the purposes of this motion to dismiss.

Millennium is a San Diego-based "health solutions company" that, among other things, provides clinical drug testing and related services to "physicians, clinics, health plans, and other medical providers" throughout the United States. Complaint ("Compl.") ¶ 2. Health care providers use Millennium's drug testing services, including urine drug testing ("UDT"), to monitor their patients' use of highly addictive prescription narcotic pain medications. Id. ¶ 2.

"Emblem maintains health insurance plans." Id. ¶ 14. Members of those insurance plans ("Emblem members") pay premiums to Emblem and, in exchange, rely on Emblem to pay for the costs of providing health care covered under those health insurance plans. Id. Millennium provides UDT services to "physicians and other health care providers" that treat Emblem members. Id. ¶ 16. In particular, physicians treating an Emblem member who has been prescribed addictive narcotic pain medication may send Millennium a requisition ordering UDT testing which specifies what drugs and metabolites Millennium should test for. Id. ¶ 16. Millennium then provides the UDT results to the physicians, who use them to make informed prescribing decisions for their patients. Id. ¶ 17. Millennium then submits claims directly to Emblem for payment of the services rendered for the Emblem member. Id. ¶ 18.

Millennium alleges that it began submitting claims for its UDT services to Emblem in 2011 and that Millennium received payments from Emblem throughout 2011 and 2012. Compl. ¶ 19. The complaint also alleges that Emblem's own "Provider Manual" confirms that the types of services provided by Millennium are medically necessary, and that Emblem regularly pays for those services when they are rendered by providers other than Millennium. Id. ¶¶ 19, 20 n.5. Millennium alleges that, beginning in early 2013, Emblem began consistently refusing to

4

pay the claims submitted by Millennium which had previously been paid. Id. ¶ 20. The complaint alleges that, all told, Emblem failed to pay and/or respond adequately to at least 27,169 claims for UDT testing performed by Millennium in response to orders from physicians treating Emblem members. Id. ¶ 20.

The complaint alleges that in March 2014, after repeated inquiries from Millennium, Emblem advised Millennium that its pending claims were in "flag status" and would be automatically denied. Id. ¶ 23. Later, in 2015, Emblem allegedly explained that its decision to place the claims on "flag status" and summarily deny them was based on its investigation of twenty-two claims related to services provided upon the orders of three physicians. Id. ¶ 24. Emblem allegedly indicated that it had determined that Millennium's services were not medically necessary because there was no evidence that the physicians had ever discussed the UDT test results with their patients. Id. ¶ 24. Emblem has allegedly continued to pay other laboratories for UDT services provided to Emblem members. Id. ¶ 27.

Millennium alleges that Emblem's failure to respond to or pay the claims submitted violates the prompt pay and notification requirements under New York's Prompt Pay statute, N.Y. Ins. L. § 3224-a. Compl. ¶¶ 30-37. The complaint also alleges that there was an implied-in-fact contract between Millennium and Emblem under which Emblem was obligated to pay

for UDT services provided by Millennium to patients covered by an Emblem health plan, which contract Emblem breached by refusing to pay for those services. Id. ¶¶ 38-43. Finally, Millennium alleges that the representations made by Emblem to its members that it "will cover the costs of their health care services" constitute unlawful deceptive acts and practices in violation of N.Y. General Business Law § 349. Id. ¶¶ 44-53. The complaint seeks declaratory and injunctive relief, damages, and fees. Id. p. 16.

The defendants now move to dismiss the complaint on a wide variety of grounds. Among other things, the defendants argue that any agreement between Emblem and Millennium does not trigger the requirements of the Prompt Pay law; that no implied-in-fact contract can exist because the health plans between Emblem and its members cover the same subject matter; and that the complaint fails to identify any specific deceptive act by Millennium that was directed to the public at large.

### III.

### A.

Emblem presents several arguments in support of its motion to dismiss Count One, the claim for violation of the New York Prompt Pay statute. Some of those arguments have merit.

The defendants argue at the outset that the Prompt Pay claim fails as a matter of law because any obligation by Emblem

6

to pay Millennium is not covered by the statute. The Prompt Pay law provides standards governing the conduct of any certified insurer in the processing of "all health care claims submitted under contracts or agreements issued or entered into pursuant to this article and articles forty-two, forty-three and forty-seven of this chapter and article forty-four of the [P]ublic [H]ealth [L]aw and all bills for health care services rendered by health care providers pursuant to such contracts or agreements." N.Y. Ins. L. § 3224-a (emphasis added). The Prompt Pay law "requires an insurer to pay undisputed claims within 30 days after receipt of an electronic submission or within 45 days after receipt by other means (see Insurance Law § 3224-a[a])." Maimonides Med. Ctr. V. First United Am. Life Ins. Co., 981 N.Y.S.2d 739, 741 (App. Div. 2014). "If a claim is disputed, the insurer is obligated to pay the undisputed portion of the claim, if there is any, and, within 30 days of receipt of the claim, notify the policyholder, covered person, or health care provider in writing of the specific reason that the insurer is not liable to pay the claim (see Insurance Law § 3224-a[b][1])." Id. An insurer who fails to comply "is obligated to pay the health care provider or the person submitting the claim the full amount of the claim," plus statutory interest. Id. at 742 (citing N.Y. Ins. L. § 3224-a[c][1]).

The complaint alleges that the implied-in-fact contract between Millennium and Emblem — through which Emblem was obligated to pay Millennium for the UDT services provided to patients covered under Emblem plans — gave rise to Emblem's obligations under the Prompt Pay law. See Compl. ¶¶ 29-37, 38-43. Emblem responds that an implied-in-fact contract cannot give rise to the requirements of that statute. Neither the complaint nor Millennium's opposition to the motion to dismiss allege any facts that support the inference that the alleged contract was one "entered into pursuant to" the articles referenced in § 3224-a. Those articles include provisions that cover life, accident, and health insurance contracts (articles thirty-two and forty-two); contracts furnishing medical expense indemnity or issued by hospital service corporations or health services corporations (article forty-three); municipal cooperative health benefit plans (article forty-seven); and health plans issued by health maintenance organizations (article forty-four of the Public Health Law). Millennium does not allege that the implied-in-fact contract between it and Emblem is itself a contract for health insurance, or any other kind of contract covered by the

relevant provisions of the Insurance or Public Health Laws.[1]

Thus, the Prompt Pay law claim must be dismissed.[2]

Count One must also be dismissed because the complaint does not allege facts sufficient to support a finding that Millennium is a "health care provider" as defined in the Prompt Pay statute. The obligations under § 3224-a require the insurer to

---

[1] The plaintiff suggested for the first time at oral argument that the alleged implied-in-fact contract might fall under § 4302 of the Insurance Law. That article covers "Non-Profit Medical and Dental Indemnity, or Health and Hospital Service Corporations." N.Y. Ins. L. § 4301 et seq. Neither the complaint nor the plaintiff's briefs contains any allegation that the plaintiff has obtained a permit under § 4302 to do business as a non-profit health service corporation. The complaint alleges only that the plaintiff is a "health solutions company" organized as a limited liability company. Compl. ¶ 2. Nor have any facts been alleged that would allow an inference that any implied-in-fact contract was "entered into pursuant to" § 4302. N.Y. Ins. L. § 3224-a.

[2] The Court therefore need not determine whether an implied-in-fact contract could ever constitute a "contract[] or agreement[] issued or entered into pursuant to" the provisions referenced in § 3224-a. The defendants also argue that, even if they were subject to the Prompt Pay statute, the complaint fails to state a claim because an insurer is not required to comply with the obligations under the statute "when there is a reasonable basis supported by specific information available for review by the superintendent that such claim or bill for health care services rendered was submitted fraudulently." N.Y. Ins. L. § 3224-a(a). The Court could not determine on a motion to dismiss whether such a "reasonable basis" existed here. Nor does the complaint allege facts supporting any allegation of fraud; indeed, even if the Court were to consider the voluminous submissions appended to the defendants' declaration, those materials do not support a finding that there was a "reasonable basis" for considering the claims fraudulent; they merely purport to have informed Millennium that its claims had been "flagged" and that Emblem considered them suspicious. See Lucyk Decl. in Supp. of Mot., Exs. A-1, A-2.

either make payment or provide notice to "a policyholder" or other "covered person," or to a "health care provider," depending on the circumstances. N.Y. Ins. L. § 3224-a(a). Millennium argues that Emblem owes its obligations to the plaintiff under the Prompt Pay law because Millennium is a "health care provider." But the complaint does not state that Millennium itself is a health care provider; rather, it repeatedly alleges that Millennium's services are "used by health care providers" in the treatment of their patients. See Compl. ¶¶ 2, 7, 13, 16, 30. In its opposition to the motion to dismiss, Millennium argues that it constitutes a "health care provider" under § 3224-a because that statute defines the term to include "an entity licensed or certified pursuant to article twenty-eight" of the Public Health Law. N.Y. Ins. L. § 3224-a(d)(2). In particular, Millennium argues that it falls within § 2801(1) of the New York Public Health Law, which defines "hospital" broadly, to include a "facility or institution engaged principally in providing services by or under the supervision of a physician . . . for the prevention, diagnosis or treatment of human disease, pain, injury, deformity or physical condition, including, but not limited to, a general hospital, public health center, diagnostic center, treatment center . . . [or] laboratory or central service facility serving one or more such institutions." Pub. Health L. § 2801(1).

Although the facts alleged in the complaint may be sufficient to give rise to the inference that Millennium is a "laboratory . . . serving one or more" facilities "engaged principally in providing services by or under the supervision of a physician," id., Section 3224-a limits its definition of "health care provider[s]" to only those institutions that are "licensed or certified pursuant to" various statutes, including article twenty-eight of the Public Health Law relating to hosptials. N.Y. Ins. L. § 3224-a(d)(2) (emphasis added). The complaint does not allege that Millennium is "licensed or certified" as a hospital under title twenty-eight of the New York Public Health Law.[3] Moreover, the Public Health Law contains an article — article five — relating to "laboratories." N.Y. Pub. Health L. § 500 et seq. That article explicitly covers clinical laboratories, which are defined as facilities "for the microbiological . . . chemical, . . . pathological, genetic, or other examination of materials derived from the human body, for the purpose of obtaining information for the diagnosis, prevention, or treatment of disease or the assessment of a health condition or for identification purposes." N.Y. Pub. Health L. § 571(1). That provision of the Public Health Law,

---

[3] Indeed, the plaintiff's counsel at oral argument suggested that the plaintiff may be licensed as a laboratory, but not as a hospital.

11

article five, is not included in the Prompt Pay law definition of "health care provider." See N.Y. Ins. L. § 3224-a(d)(2). Therefore, the Prompt Pay law claim also fails as a matter of law because the complaint does not allege facts sufficient to establish that Millennium is an "entity licensed or certified" as a hospital as defined by article twenty-eight of the New York Public Health law.

**B.**

Emblem also argues that the complaint fails to state a claim for breach of an alleged implied-in-fact contract (Count Two of the complaint). In particular, the defendants argue that the express contracts between Emblem and its policyholders cover "the subject matter involved" and that there can therefore be no implied-in-fact contract between Emblem and Millennium. This argument fails.

In order to conclude that the express contracts between Emblem and its policyholders cover the "subject matter involved" in the implied-in-fact contract claim, the Court would have to consider the substance of each of the contracts between Emblem and its members. In addition to documents attached to the complaint as exhibits and documents incorporated by reference in the complaint, the Court may consider a document "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." DiFolco v.

12

MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quotation marks omitted). The complaint plainly does not rely on those contracts. See Jones v. Halstead Mgmt. Co., LLC, 81 F. Supp. 3d 324, 331 (S.D.N.Y. 2015) (noting that when a complaint is "replete with references to the contract and requests judicial interpretation of its terms, the contract is integral to the complaint," but when "the parties dispute how the document related to or affected the contractual relationships, the document should not be considered on a motion to dismiss") (alterations and quotation marks omitted). The plaintiff's argument is that, whatever the terms of the agreements between Emblem and its members, Emblem bound itself to a separate, freestanding implied-in-fact contract with Millennium requiring Emblem to pay claims for UDT services provided by Millennium to Emblem members.

In any event, it does not follow that those express contracts – entered into between Emblem and its members, to which Millennium was not a party – would preclude as a matter of law an implied-in-fact contract between Millennium and Emblem. The cases relied upon by Emblem do not hold that an express contract between two parties prevents a third party from alleging a separate implied-in-fact agreement with one of those parties. In Miller v. Schloss, the New York Court of Appeals confronted a situation in which "[t]he entire transaction [at

issue] was covered and is controlled by the express agreement or understanding of the parties" in the case. 113 N.E. 337, 339 (N.Y. 1916).[4] In Julien J. Studley, Inc. v. N.Y. News, Inc., the Court determined that the plaintiff real estate broker could not establish that she was employed by the defendants property owners, and thus could not establish an implied-in-fact contract, because the express contract to which the plaintiff herself was a party established that she was the agent of the prospective buyers, not the property owners. 512 N.E.2d 300, 301 (N.Y. 1987).

The underlying rationale for the rule regarding express agreements covering the same subject matter is that the express agreement evinces that the parties to that agreement "intended to be bound only by a formal written agreement." Bader v. Wells Fargo Home Mort. Inc., 773 F. Supp. 2d 397, 413 (S.D.N.Y. 2011) (quoting Valentino v. Davis, 703 N.Y.S.2d 609, 612 (App. Div. 2000)). No such inference can be made when the party alleging an implied-in-fact contract was not party to the express agreement.

The defendants also argue that, even assuming that the complaint states a claim for an implied-in-fact contract, that

---

[4] The defendants' reliance at oral argument on Rojas v. Cigna Health and Life Insurance Co. is also unavailing. 793 F.3d 253 (2d Cir. 2015). The Court of Appeals there considered only whether the plaintiff physician constituted a "beneficiary" entitled to sue to enforce the provisions of an ERISA plan. Id. at 256-258.

contract was terminated by at least July 3, 2013, after which date Emblem's intent to be bound by such an agreement could no longer be inferred. In support of its argument, Emblem again asks the Court to consider documents that were neither incorporated by reference nor relied upon in the complaint. Although the complaint refers to a communication by Emblem in March 2014, there is no reference to either the August 2013 or the February 2014 letters which are attached to the defendants' declaration. Those letters cannot be considered on a motion to dismiss. See DiFolco, 622 F.3d at 111.

Undeterred, the defendants argue further that any purported contract was terminated by at least March 2014, the date by which the complaint alleges that Emblem notified Millennium that the claims would be denied. The Court could not determine based on the facts alleged in the complaint that the alleged implied-in-fact contract was "terminated" as a matter of law. See Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006) (finding that the district court erred in both considering "external material" in its 12(b)(6) ruling and in relying on those materials "to make a finding of fact that controverted the plaintiff's own factual assertions set out in its complaint"). Moreover, any finding of termination would not require dismissal of the claim for claims that pre-date the termination date. In sum, because the defendants ask the Court

to weigh issues of fact not alleged, relied on, or incorporated by reference in the complaint, the motion to dismiss Count Two is denied.

## C.

Emblem also moves to dismiss the final freestanding claim, Count Three, which alleges violation of the New York deceptive acts and practices statute, General Business Law § 349. That statute makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the State of New York. N.Y. Gen. Bus. L. § 349. "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). "With regard to the first factor, the gravamen of the complaint must be consumer injury or harm to the public interest. The critical question, then, is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." Vitolo v. Mentor H/S, Inc., 426 F. Supp. 2d 28, 33-34 (E.D.N.Y. 2006) (internal citations and quotation marks omitted), aff'd, 213 Fed. App'x 16 (2d Cir. 2007). The complaint alleges that "Emblem's false representations to its consumer members that Emblem will cover the costs of their health care services" and refusal to "pay for

16

health care services provided by Millennium" have injured both
Millennium and Emblem members, who relied on the representation
that Emblem would cover the cost of Millennium's services.
Compl. ¶ 46; see id. ¶¶ 44-53.

Emblem first argues that the complaint does not state a
claim under § 349 because the statute covers only "deceptive
acts directed to the public at large." Thus, Emblem argues,
allegation of harm to Emblem members is insufficient to state a
claim under § 349. However, New York courts have consistently
held that harm to insureds may form the basis of a § 349 claim.
See Wilner v. Allstate Ins. Co., 893 N.Y.S.2d 208, 213 (App.
Div. 2010) (collecting cases). Vitolo, upon which defendants
rely heavily, considered a complaint which "focuse[d] almost
entirely on the losses suffered by Plaintiff [physician] and his
business, rather than to consumers or Plaintiff's patients." 426
F. Supp. 2d at 34. That case involved a physician who sued the
manufacturer of saline-filled breast implants after his patients
"experienced a total of 19 deflations within four months." Id.
at 31. The court there determined on summary judgment that
"[u]nder these circumstances, Plaintiff's claim must fail"
because the "gravamen of the complaint is harm to a business as
opposed to the public at large." Id. at 34. In this case, unlike
Vitolo, the complaint sufficiently alleges harm to numerous
insureds.

The defendants also rely on Infostar Inc. v. Worcester Insurance Co. – a case decided twenty years ago and which predates many of the New York cases cited in Wilner. 924 F. Supp. 25 (S.D.N.Y. 1996). In that case the plaintiff was an individual policyholder complaining that the defendant insurers unfairly claimed that "the fire [at issue] was caused by arson, although they have no reason to believe that arson occurred, and that defendants have intentionally delayed settlement." Id. at 27. The court granted summary judgment to the defendants, concluding that the plaintiff's failure to adduce any evidence "concerning defendants' generally applicable settlement practices" required dismissal of the § 349 claim. Id. at 29. In contrast, the § 349 claim at issue here centers on recurring conduct that the complaint alleges shifts "costs onto New York consumers of health care services." Compl. ¶ 48.

Moreover, unlike in Vitolo or Infostar, this case involves over 27,000 claims for services rendered to Emblem patients; the unlawful conduct alleged "was not an isolated incident, but a routine practice that affected many similarly situated insureds." Elacqua v. Physicians' Reciprocal Insurers, 860 N.Y.S.2d 229, 231 (App. Div. 2008) (reversing dismissal of plaintiffs' § 349 claim where insurer failed to inform policyholders of their right to select independent counsel of their choosing); see also Riordan v. Nationwide Mut. Fire Ins.

Co., 977 F.2d 47, 53 (2d Cir. 1992) (affirming liability under § 349 where plaintiff "presented ample evidence to prove that Nationwide engaged in similar deceptive settlement practices against other policyholders, thus satisfying the GBL § 349 requirement that the conduct be recurring or have ramifications for the general public"). The complaint thus adequately pleads consumer-oriented conduct.

Emblem next argues that the complaint fails to plead adequately that the alleged misconduct was materially misleading. "To determine whether an act or practice is materially misleading, a court looks to whether it could mislead a reasonable consumer acting reasonably under the circumstances." Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010). "There can be no claim for deceptive acts or practices . . . when the alleged deceptive practice was fully disclosed." Id. at 404 (quotation marks omitted). Emblem argues that the § 349 claim fails because "Emblem's members were informed of the terms of their health care coverage through the very healthcare benefit plans or agreements Millennium references." But the complaint does not allege facts suggesting that the deceptive practice was disclosed in the Emblem benefits plans; rather, it alleges that Emblem made representations that would lead consumers to believe that Emblem would pay for the

19

UDT services, which representations were rendered deceptive by Emblem's failure to pay for the services.

However, a "blanket allegation" that Emblem made representations that would lead members to believe Emblem would pay for the UDT services is "insufficient to plead a materially misleading 'deceptive act or practice.'" Chiste, 756 F. Supp. 2d at 404. The complaint alleges that the unlawful conduct includes "Emblem's false representations to its consumer members that Emblem will cover the costs of their health care services." Compl. ¶ 46. But the complaint fails to identify the actual representations at issue; nor does it specify whether those representations are made in the health care plans themselves, or in other communications to Emblem members, or in general consumer-directed advertising. The defendants' motion to dismiss the § 349 claim is therefore granted without prejudice to the plaintiff's ability to file an amended complaint detailing the alleged misrepresentations.[5]

### D.

Finally, Emblem makes a variety of arguments that the state law causes of action must be dismissed as to those claims

---

[5] The defendants also move to dismiss Count Four, the claim for declaratory judgment "because [Millennium] is not entitled to any relief under its first three counts." Because the complaint states a claim as to at least some causes of action, that argument is rejected as moot and the motion is denied as to Count Four.

relating to Emblem plans governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, and Medicare plans, see 42 U.S.C. § 1395 *et seq.* Emblem also argues that it "is not even a proper party as to any claims arising under a FEHBA plan," that any claims arising under FEHBA are barred by sovereign immunity, and that Millennium lacks standing to raise the statutory rights of its patients. These arguments rely on the facts alleged in the Lucyk declaration and the documents attached thereto. As discussed above, those facts are not alleged in the complaint, and the attachments are not incorporated by reference or otherwise relied upon in the complaint. They therefore cannot be considered on this motion to dismiss. See Jones, 81 F. Supp. 3d at 331. The motion to dismissed based on these grounds is therefore denied.

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

Therefore, for the reasons explained above, the defendants' motion to dismiss the first and third causes of action is **granted** and those claims are dismissed without prejudice. The motion to dismiss the second and fourth causes of action is **denied.** The Clerk is directed to close ECF No. 40.

**SO ORDERED.**
**Dated:**     New York, New York
            March 9, 2017

                                        _____
                                            John G. Koeltl
                              United States District Judge